IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.B.'s VARIETY INC., D/B/A NEW WAVE CAFÉ, <br>     *Plaintiff,* <br><br> v. <br><br> AXIS INSURANCE COMPANY, <br>     *Defendant.* | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br><br><br><br> No. 20-4571 |

## MEMORANDUM

**KENNEY, J.**                                                                                        **MARCH 29, 2021**

      The Plaintiff J.B.'s Variety, Inc. d/b/a New Wave Café ("Plaintiff" or "New Wave Café") is a restaurant and bar that has been forced to close and modify its operations due to the COVID-19 pandemic and consequent Shutdown Orders. Plaintiff suffered business income losses and sought indemnity from its insurance provider, Axis Insurance Company ("Axis" or "Defendant") under its all-risk commercial property policy. Axis denied Plaintiff's claim.  Plaintiff then filed suit against Axis for breach of contract and seeking a declaratory judgment that its losses are indeed covered. ECF No. 1. This matter is currently before the Court on Axis's Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 17. Having considered Axis's motion, the Plaintiff's response (ECF No. 18), and Defendant's reply (ECF No. 19), the Court will grant Defendant's motion because Plaintiff's claims are not covered by the terms of its policy.

I.  **BACKGROUND**[1]

  A. **The Parties and Policy**

New Wave Café is a bar and restaurant located in Philadelphia, Pennsylvania. ECF No. 14 ¶ 1. Defendant is an insurance carrier based in Chicago, Illinois.[2] ECF No. 14 ¶ 10. New Wave Café purchased commercial property insurance coverage (the "Policy") from Defendant in May 2019. ECF No. 14 ¶ 16, *see* ECF No. 14, Ex. 1. Among other things, the Policy includes a Business Income Coverage Form that provides Plaintiff coverage in the event of certain interruptions to its business. Relevant here, that Form includes Business Income coverage, Civil Authority coverage, and Extra Expense coverage.

The Policy states that it covers any Business Income loss that New Wave Café sustains "due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration,'" if the suspension was "caused by direct physical loss of or damage to property at [the insured's] premises." ECF No. 14, Ex. 1 at 120. The Policy defines the "period of restoration" as the period of time beginning after the direct physical loss or

---

[1] The Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [ ] construe[s] them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). The Court draws the following facts from the Amended Complaint and the attached exhibits. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

[2] Plaintiff is a citizen of Pennsylvania; Defendant is a citizen of Illinois. Because the parties are completely diverse and the amount in controversy exceeds $75,000, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

damage to the insured property and ending either "when the premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality" or "[t]he date when business is resumed at a new permanent location." *Id*. at 128. Business Income includes "[n]et income ... and [c]ontinuing normal operating expenses incurred, including payroll." *Id.* at 120. Extra Expense Coverage is provided if the Business Income Coverage applies and the insured incurs necessary expenses during the "period of restoration" that it would not have incurred had there been no direct physical loss or damage to the property. *Id.*

The Civil Authority provision covers loss of Business Income and Extra Expenses resulting from damage to property other the insured's premises when, as a result of "dangerous physical conditions," a civil authority's actions prohibit access to both the insured's premises and the area immediately surrounding the damaged property. *Id*. at 121. The damaged property must be within one mile of the insured's premises.

The Policy excludes coverage for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id*. at 75 (the "Virus Exclusion"). The Virus Exclusion applies to "all coverage under all forms and endorsements," including Business Income, Extra Expense, and Civil Authority coverage. *Id*.

### B. The Shutdown Orders

On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of the emergent situation in the Commonwealth as a result of the spread of COVID-19. ECF No. 14, Ex. 3. On March 17,

2020, the Mayor of Philadelphia and the Health Commissioner of the City of Philadelphia jointly issued an order prohibiting the operation of non-essential businesses in Philadelphia. ECF No. 14, Ex. 4. On March 19, 2020, Governor Wolf issued an order requiring all non-life sustaining businesses in the Commonwealth to cease or modify operations. ECF No. 14, Ex. 5. Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control." *Id*. On March 23, 2020, Governor Wolf issued a stay-at-home order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties. ECF No. 14, Ex. 7. On April 1, 2020, Governor Wolf extended the March 23, 2020 stay-at-home order to the entire Commonwealth of Pennsylvania. ECF No. 14, Ex. 8. Subsequent orders designed to mitigate the spread of the COVID-19 virus followed.

As a result of these Shutdown Orders, Plaintiff had to suspend and modify its operations. ECF No. 14 ¶ 77. Plaintiff submitted a claim for business losses seeking coverage under the Policy. *Id.* at ¶ 84. Defendant rejected Plaintiff's business loss and business interruption claims, contending, *inter alia*, that Plaintiff did not suffer physical damage to its property directly and stating other reasons why Plaintiff was not entitled to coverage for the losses and damages claimed. *Id.* at ¶ 85.

### C. Procedural History

On September 18, 2020 Plaintiff initiated this action for breach of contract and seeking a declaration that it is entitled to coverage under the Policy for business income losses caused by the COVID-19 global pandemic and resulting Shutdown Orders. ECF

No. 1. After Defendant filed a Motion to Dismiss (ECF No. 11), Plaintiff filed an Amended Complaint. ECF No. 14. On February 11, 2021, Defendant filed the instant Motion to Dismiss Plaintiff's Amended Complaint, which is now before the Court for resolution. *See* ECF Nos. 17, 18, and 19.

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the factual allegations contained in the complaint as true but disregards rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). This Court will grant a motion to dismiss if the factual allegations do not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Third Circuit directs the Court to apply a three-step analysis under a 12(b)(6) motion. First, the Court must take note of the elements the plaintiff must plead to state a claim. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 675). Next, the Court must identify allegations that, because they are no more

than conclusions, are not entitled to the assumption of truth. *Id*. Finally, the Court assumes the veracity of well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement for relief. *Id*. In ruling on a motion to dismiss, the Court considers only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

### III. DISCUSSION

Interpretation of an insurance policy, and specifically whether a particular loss triggers coverage, is a question of law. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). The Court will read the policy as a whole and construe its meaning according to its plain language. *Spector v. Fireman's Fund Ins. Co.*, 451 F. App'x 130, 136 (3d Cir. 2011). When the policy language is "clear and unambiguous," the Court must "give effect to that language." *401 Fourth Street v. Inv'rs Ins. Co.*, 879 A.2d 166, 170 (Pa. 2005). When policy language is ambiguous, the Court is to construe the provision against the insurer and in favor of the insured. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016). Policy language is ambiguous where it is reasonably susceptible to more than one construction. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (1999). However, the language may not be stretched beyond its plain language meaning to create an ambiguity. *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011). Mere disagreement between the parties does not render the policy language ambiguous. *Id*.

### A. Coverage

As the insured, Plaintiff has the initial burden of establishing coverage under the Policy. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009). Where the insured meets that burden and the insurer relies on a policy exclusion as the basis for denying coverage, the insurer then has the burden of proving that the exclusion applies. *Id.*[3]

### 1. Business Income Coverage

Under the Policy, Plaintiff can obtain Business Income and Extra Expense coverage only if it must suspend its operations during a period of restoration as a result of "direct physical loss of or damage to" its premises. ECF No. 14-1 at 120. No one disputes that Plaintiff suspended its operations as a result of the Shutdown Orders. The only question is whether physical loss or damage caused that suspension.

Plaintiff argues that, because it stated that it has suffered direct physical loss or damage to its property in the Amended Complaint (*see, e.g.*, ECF No. 14 at ¶ 48), it has stated a claim sufficient to survive a motion to dismiss. However, this misstates the

---

[3] This Court has recently considered similar claims under this framework. *See Pennsylvania ATCM Optical, Inc. v. Twin City Fire Ins. Co.,* No. CV 20-4238, 2021 WL 131282 (E.D. Pa. Jan. 14, 2021); *Clear Hearing Sols., LLC v. Cont'l Cas. Co.*, No. CV 20-3454, 2021 WL 131283 (E.D. Pa. Jan. 14, 2021); *Indep. Rest. Grp. v. Certain Underwriters at Lloyd's, London*, No. CV 20-2365, 2021 WL 131339 (E.D. Pa. Jan. 14, 2021); *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, No. CV 20-3863, 2021 WL 131555 (E.D. Pa. Jan. 14, 2021); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, No. CV 20-2401, 2021 WL 131556 (E.D. Pa. Jan. 14, 2021); *Zagafen Bala, LLC v. Twin City Fire Ins. Co.*, No. CV 20-3033, 2021 WL 131657 (E.D. Pa. Jan. 14, 2021); *Moody v. Hartford Fin. Grp., Inc.*, No. CV 20-2856, 2021 WL 135897 (E.D. Pa. Jan. 14, 2021); and *Whiskey Flats Inc. v. Axis Ins. Co.*, No. CV 20-3451, 2021 WL 534471 (E.D. Pa. Feb. 12, 2021).

pleading standard. While it is true that F.R.C.P. 8(a)(2) does not require the heightened pleading of specific facts, it does require the pleading to contain enough facts to state a claim to relief that is plausible. *Twombly*, 550 U.S. at 570. What constitutes direct physical loss or damage under the Policy is a legal question (908 A.2d at 897); Plaintiff simply stating that it has suffered direct physical loss or damage, without facts plead to support that statement, is conclusory and will be disregarded.

      Plaintiff also argues that "loss," as it is not defined in the Policy, reasonably encompasses "loss of use," which Plaintiff has suffered here. However, while the Court agrees that "loss" of the premises can mean the loss of use, that loss of use must be tied to a physical condition actually impacting the property, which is not satisfied here. *See Port Auth. of N.Y. & N.J. v. Affiliated MF Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) (finding that asbestos contamination, without contamination of the property to such a degree that "its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable," was not sufficient for loss of use to constitute physical loss or damage). Plaintiff did not lose use because the premises suffered physical damage, nor was the loss of use caused by actual contamination of the property. That the property might be susceptible to contamination—i.e., because it is "in an enclosed building" (ECF 14 ¶ 79)—is not a condition that can *trigger coverage* under a reasonable reading of the Policy. *See Brian Handel D.M.D. v. Allstate Ins. Co.*, No. 20-3198, 2020 WL 6545893 (E.D. Pa. Nov. 6, 2020) (finding no "direct physical loss of or damage to" property where the property remained inhabitable and usable, albeit in limited ways).

Further, reading "direct physical loss of or damage to property" to contemplate mere loss of use is not a sound interpretation of the Policy because it does not make sense reading the contract as a whole. *Colorcon, Inc. v. Le*wis, 792 F. Supp. 2d 786, 797 (E.D. Pa. 2011)(a court must read the contract "as a whole ... it being necessary to consider every part thereof in order to resolve the meaning of a particular part as well as that of the whole") (internal citation and quotation omitted). Importantly, the Policy only pays Business Income coverage and Extra Expense coverage during a "period of restoration." The Policy measures that period from after the direct physical loss or damage (72 hours for Business Income coverage; immediately for Extra Expense coverage) until the "date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or when "business is resumed at a new permanent location." ECF No. 14, Ex. 1 at 128. In addition, the Policy includes special exclusions for the Business Income coverage that apply to an "increase of loss caused by or resulting from [a d]elay in rebuilding, repairing, or replacing the property due or resuming 'operations' due to interference at the location by strikers or other persons." *Id*. at 80.

Reading the contract in its entirety, these provisions are not ambiguous. The Policy makes clear that there must be some sort of physical damage to the property that is the subject of a repair, rebuilding, or replacing. The effects of the COVID-19 pandemic on Plaintiff do not fall within that definition, as the presence or threatened presence of the coronavirus on the property can be largely remediated by mask wearing, social distancing, and disinfecting surfaces. The loss of use is caused directly by the Shutdown Orders, not any physical condition, damage, or contamination of the insured premises.

The parties' agreement to provide Business Income coverage only during a "period of restoration" and to measure that period of restoration against the time it takes to repair the premises indicates that they intended the Policy to cover losses for physical damage, and that intent controls the Court's interpretation of the Policy. Therefore, the Plaintiff has not met its burden of establishing coverage under the Business Income and Extra Expense coverage.

### 2. Civil Authority Coverage

The Policy's Civil Authority coverage applies only if there is "damage to property other than property at the described premises" and a civil authority prohibits access to the area immediately around the covered premises in response to dangerous physical conditions in the area. ECF No. 14, Ex. 1 at 121. But Plaintiff did not close because of damage to a nearby property or because there was some dangerous physical condition at another nearby property. It closed because the Shutdown Orders applied to its own operations. Thus, its closure and resulting losses fall outside the scope of the Civil Authority coverage.

### B. The Virus Exclusion

Even if Plaintiff's claimed losses fell within the grant of coverage under the Business Income or Civil Authority provisions, the Virus Exclusion would still prevent recovery. The Virus Exclusion applies to "loss or damage caused by or resulting from any virus … that induces or is capable of inducing physical distress, illness or disease." ECF No. 14, Ex. 1 at 75. The language is not ambiguous and it applies to COVID-19, which is caused by a coronavirus that causes physical illness and distress. *See Brian*

10

*Handel D.M.D., P.C. v. Allstate Ins. Co.*, Civ. No. 20- 3198, 2020 WL 6545893, at *4 (E.D. Pa. Nov. 6, 2020) (similar virus exclusion barred coverage). Plaintiff claims that the Virus Exclusion does not bar coverage because it does not contemplate the type of loss or damage that has been caused by COVID-19 and is therefore open to various interpretations. However, the language of the exclusion is not ambiguous and clearly states that it "applies to all coverage under all forms and endorsements [ ], including … forms or endorsements that cover business income, extra expense or action of civil authority." ECF No. 14, Ex. 1 at 75.

IV. **LEAVE TO AMEND**

The Court should give a plaintiff leave to amend its complaint where justice so requires. Fed. R. Civ. P. 15(a)(2). But where leave to amend would be futile, denial of leave to amend is appropriate. *See Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007). Plaintiff in this case has already amended its complaint once in response to the Defendant's first Motion to Dismiss. *See* ECF Nos. 1, 11, and 14. On amendment of the complaint, Plaintiff presumably put its best possible pleading forward. The Court will not allow Plaintiff leave to amend its Amended Complaint again, as that would only unnecessarily delay the progression of this case. The Court can conceive of no facts the Plaintiff could allege under the circumstances of this case that would bring its losses within the Policy's grant of coverage.

V. **CONCLUSION**

Because the Policy does not cover Plaintiff's losses, the Court will grant Defendant's Motion to Dismiss. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**